# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:22-cv-00299-RP** |
| | § | |
| **THE CITY OF AUSTIN and** | § | |
| **WALTER DODDS,** | § | |
| *Defendants* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **THE HONORABLE ROBERT PITMAN**
      **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Walter Dodds' Motion to Stay Discovery Pending Criminal Proceedings, filed May 18, 2022 (Dkt. 11); Defendant City of Austin's Motion to Stay Discovery and Defer Entry of a Scheduling Order, filed August 3, 2022 (Dkt. 25); and the related response and reply briefs. On July 13, 2022 and August 24, 2022, the District Court by Text Orders referred the motions to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

On the evening of April 18, 2020, Plaintiff Jane Doe[1] and her boyfriend, A.G., had an argument "during which A.G. had a breakdown, put a belt around his throat, and tightened it to threaten suicide." Second Amended Complaint, Dkt. 17 ¶ 8. Doe's mother, who was in a nearby apartment, called 911. *Id.* ¶ 10. At 6:13 p.m., Defendant Walter Dodds, then an officer with the Austin Police

---

[1] Plaintiff "files under a pseudonym to protect her privacy and safety." Second Amended Complaint, Dkt. 17 ¶ 1.

Department (APD), arrived at Doe's apartment. *Id.* ¶¶ 11-12. After interviewing both A.G. and Doe, Dodds determined that A.G. needed to be hospitalized for his own protection. *Id.* ¶¶ 12-13. During Doe's interview, Dodds asked for Doe's phone number and told her that "he would be calling her to tell her where A.G. was being taken." *Id.* ¶ 15. Doe alleges that at the end of the interview, Dodds asked Doe about locking the door to her apartment and said: "What if someone sneaks in there? You don't want to be sleeping with some dude in there with you." *Id.* ¶¶ 16-17. Dodds then accompanied A.G. to the hospital and completed the required documentation for A.G.'s emergency detention. *Id.* ¶ 18.

Doe alleges that at 6:54 p.m., Dodds called her from his APD-issued cell phone and told her which hospital A.G. had been taken to, "but then began to ask if he could come over" and "asked her if Doe would take off his uniform for him." *Id.* ¶¶ 20-21. Doe alleges that she did not consent to either request and ended the call. *Id.* Doe alleges that Dodds called Doe several more times between 6:54 p.m. and 9:09 p.m., but she did pick up any of his calls. *Id.* ¶ 22. Doe then fell asleep in her bedroom. *Id.* ¶ 23.

Sometime after she fell asleep, Doe alleges that Dodds returned to her apartment in his APD uniform and knocked on the door. *Id.* ¶ 24. Doe's minor nephew answered the door. *Id.* ¶ 27. Doe alleges that Dodds "walked by Doe's nephew, directly into Doe's bedroom, and shut the door behind him." *Id.* ¶ 28. Doe alleges that Dodds then proceeded to rape her as follows:

> Doe awoke to Officer Dodds in her bedroom penetrating her vagina with his penis. Doe was shocked, frightened, and confused about what was going on and never consented to any contact of any kind from Officer Dodds. Officer Dodds then flipped her onto her stomach and forced his penis into her vagina two more times.[2]

*Id.* ¶¶ 31-33.

---

[2] Doe alleges that APD investigators conducted a DNA test on her bed sheets which matched Dodds' DNA. Dkt. 17 ¶ 35.

Over the next several days, Doe alleges that Dodds repeatedly called her from his APD-issued cell phone and drove by her apartment. *Id.* ¶¶ 36-40. On April 29, 2020, Doe called 911 to report the sexual assault. *Id.* ¶ 44.

Dodds was arrested on September 10, 2020, on charges of sexual assault in violation of Texas Penal Code § 22.011 and official oppression in violation of Texas Penal Code § 39.03. *Id.* ¶ 45; *State of Texas v. Dodds*, Case Nos. D-1-DC-20-301555, D-1-DC-20-900094 (460th Dist. Ct. Travis Cnty., Tex. Sept. 10, 2020). Dodds' criminal cases remain pending in Travis County, where he was indicted on August 30, 2022 for sexual assault, burglary of a habitation with intent to commit a sex offense, and official oppression.[3]

On March 30, 2022, Doe filed this civil rights lawsuit under 42 U.S.C. § 1983 against the City of Austin and Dodds in his individual capacity. Doe alleges that Dodds violated her substantive due process right to bodily integrity under the Fourteenth Amendment by sexually assaulting her. Doe further alleges that Dodds violated her Fourth Amendment rights when he unlawfully entered her home, seized her by using excessive force, and restrained her freedom. Doe asserts that the City is liable for Dodds' conduct, based on its hiring policies and failure to train, supervise, investigate, and discipline its officers. Doe also alleges that the City has "a culture of tolerance for sexual violence, unjustified skepticism of reports of sexual violence, and sexist views which contributed to further sexual violence by officers." Dkt. 17 ¶ 197(j).

On July 11, 2022, the City filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), arguing that Doe's Second Amended Complaint failed to allege sufficient facts to establish that

---

[3] The Court takes judicial notice of the state court docket under Federal Rule of Evidence 201. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (holding that district court may take judicial notice of state court docket). *See* https://www.traviscountytx.gov/district-clerk/online-case-information.

the City is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).[4] The Motion to Dismiss remains pending before the District Court.

In his Motion to Stay, Dodds asks the Court to stay discovery pending resolution of his criminal proceedings. In its Motion to Stay, the City asks the Court to stay discovery and defer entering a scheduling order until the District Court has ruled on its Motion to Dismiss. Doe opposes both Motions.

## II.    Legal Standards

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "Although a court is afforded broad discretion when deciding discovery matters, the court abuses its discretion when its decision is based on an erroneous view of the law." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 n.10 (5th Cir. 2019).

Under Rule 26(c), a district court may stay discovery on a showing of "good cause." Good cause exists "when the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 767 (W.D. Tex. 2008) (quoting

---

[4] In *Monell*, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. Therefore, to establish municipal liability under Section 1983, a plaintiff must show (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)).

FED. R. CIV. P. 26(c)(1)). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (cleaned up).

The court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). For example, district courts properly defer discovery while deciding threshold issues of subject matter jurisdiction, such as whether the defendants are proper parties to the action. *Id.* Stays of discovery also are justified pending resolution of certain immunity issues, such as whether a defendant is entitled to absolute, sovereign, or qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "discovery should not be allowed" until threshold qualified immunity question was resolved); *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) ("The district court acted properly in staying discovery in this case pending resolution of the immunity issues.").

A district court also may stay a civil action when a defendant in the case is facing criminal charges. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) ("Certainly, a district court may stay a civil proceeding during the pendency of a parallel criminal proceeding."); *U.S. ex rel. Gonzalez*, 571 F. Supp. 2d at 761 ("When a defendant in a civil case is facing criminal charges, a district court may, in its discretion, stay the civil action."). "Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *Little Al*, 712 F.2d at 136 (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)). In determining whether civil discovery should be allowed to proceed in light of an impending

criminal case, the Fifth Circuit Court of Appeals directs trial courts "to employ judicial discretion and procedural flexibility to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)).

Formal criminal proceedings are not a requirement to the proper issuance of a stay. *In re Grand Jury*, 866 F.3d at 234*; see also Campbell*, 307 F.2d at 487 (noting that trial judge should not "ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought"). Courts have stayed civil discovery to preserve a defendant's Fifth Amendment right against self-incrimination and to resolve the conflict he would face between asserting this right and defending the civil action, to prevent extending criminal discovery beyond the limits of the Federal Rule of Criminal Procedure 16(b), exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case. *Id.*; *First Fin.*, 659 F.2d at 668; *Campbell*, 307 F.2d at 487; *Bean v. Alcorta*, 220 F. Supp. 3d 772, 775 (W.D. Tex. 2016).

### III.     Dodds' Motion to Stay

Dodds moves to stay discovery pending resolution of his criminal proceedings. Dodds argues that that if a stay is not granted,

> Defendant's exercise of his Fifth Amendment right could be offered as evidence against him in this suit, and the jury could be permitted to draw an adverse inference when rendering its verdict. If he instead testifies in a deposition during this case without a stay of discovery being granted, his upcoming grand jury presentation and potential criminal trial defense could be harmed. Without a stay, Defendant will be forced to provide testimony for his actions leading up to and during the alleged sexual assault and official oppression. Defendant would be compelled to choose between pursuing a meritorious civil defense or handicapping his criminal defense.

Dkt. 11 at 4.

Doe argues that the Court should deny the Motion to Stay because (1) "Dodds cannot show any overlap between his anticipated charges and the City's policy, training, and supervision at issue in this case"; (2) "a stay of discovery, particularly to the City, would unfairly prejudice Plaintiff due to the passage of time—including particularly the expiration of the City's record retention periods—whereas proceeding with discovery as to the City would not unfairly harm Dodds"; and (3) "the Court and the public have an interest in proceeding with this case, as the case involves the City's failure to prevent Dodds' egregious misconduct." Dkt. 15 at 1.[5]

To assess whether special circumstances justify a stay, courts within the Fifth Circuit consider the following six factors: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the criminal case; (3) the private interests of the plaintiffs in proceeding expeditiously; (4) the burden on the defendants; (5) the interest of the courts; and (6) the public interest. *Bean*, 220 F. Supp. 3d at 775. The Court addresses each in turn.

### A.  Whether Issues in the Criminal and Civil Cases Sufficiently Overlap

The extent to which issues in the criminal case overlap with those presented in the civil case generally is regarded as "the most important factor in the analysis." *Slack v. City of San Antonio, Texas*, No. SA-18-CV-1117-FB, 2019 WL 11097069, at *2 (W.D. Tex. May 28, 2019). "Where there is significant overlap, self-incrimination is more likely and thus weighs in favor of a stay. On the other hand, if there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Bean*, 220 F. Supp. 3d at 776 (cleaned up).

---

[5] As demonstrated by these arguments, Doe has interpreted Dodds' Motion to Stay Discovery as request to stay discovery as to both Dodds and the City. The Court reads Dodds' Motion as a request to stay discovery only directed at him, and not the City. The fact that the City has filed its own Motion to Stay based on different grounds appears to support the Court's conclusion. Accordingly, the Court addresses each Motion to Stay separately.

The same underlying incident forms the basis of this lawsuit and the criminal charges against Dodds: his alleged sexual assault of Doe. To prove that Dodds committed the felony offense of sexual assault, Travis County must prove that Dodds "intentionally or knowingly . . . cause[d] the penetration of the anus or sexual organ of another person by any means, without that person's consent." TEX. PENAL CODE ANN. § 22.011 (West 2021). Doe alleges that "Officer Dodds, while acting under color of law, violated Plaintiff Doe's substantive due process right to bodily integrity by penetrating her with his penis." Dkt. 17 at ¶ 183. Because there is significant overlap between the issues presented in this case and Dodds' criminal proceedings, "there is a significant danger of self-incrimination," weighing strongly in favor of staying the case. *Bean*, 220 F. Supp. 3d at 776.

Doe's *Monell* claim against the City also substantially overlaps with the official oppression charge against Dodds. As stated above, to establish municipal liability under Section 1983 under *Monell* and its progeny, a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Newbury*, 991 F.3d at 680. To prove that Dodds committed official oppression, Travis County must establish that Dodds, acting under color of his office or employment:

> (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;
>
> (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or
>
> (3) intentionally subjects another to sexual harassment.

TEX. PENAL CODE ANN. § 39.03 (West 2019). Although the City is not a party to the criminal proceedings, the Court finds that Dodds' oppression charge substantially overlaps with Doe's *Monell* claims against the City. *See Slack*, 2019 WL 11097069, at *2 ("The significant overlap presented in this case weighs in favor of a stay and the fact the City of San Antonio is not involved

in the criminal review/investigation does not change that result."); *Jackson v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 WL 393552, at \*6 (W.D. Tex. Feb. 2, 2016) (finding substantial overlap between criminal murder prosecution against police officer and civil rights lawsuit against county where criminal prosecution arose from same facts presented in civil case).

Because there is sufficient overlap between issues in the criminal and civil cases, the Court finds that the first and most important factor weighs strongly in favor of staying this case.

### B.  Status of the Criminal Case

Doe argues that the second factor weighs against a stay because Dodds has yet to be indicted. As stated above, after these motions were fully briefed, Dodds was indicted on charges of sexual assault, burglary of a habitation with intent to commit a sex offense, and official oppression. "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *Bean*, 220 F. Supp. 3d at 776. In view of Dodds' arrest, indictment, and pending charges, the Court finds that the second factor weighs in favor of a stay.

### C.  Whether Plaintiff's Private Interests Outweigh the Prejudice Caused by a Delay

The Court next weighs "the private interests of the plaintiff in proceeding expeditiously against the prejudice that will be caused by the delay that will result from the stay." *Sec. & Exch. Comm'n. v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at \*3 (N.D. Tex. July 20, 2004). When evaluating the third factor, courts "may require a plaintiff to establish more prejudice than simply a delay in its right to expeditiously pursue his claim." *Bean*, 220 F. Supp. 3d at 776.

Although it is clear that Doe's interest in proceeding expeditiously will not be advanced by a stay, she has not alleged that she will suffer any prejudice other than delay in her right to pursue her claim. Doe alleges that the City has deleted evidence in a past civil case and potentially could do so in this case, but that argument is speculative. In addition, Doe identifies no discovery that is available now but would be unavailable later should a stay be granted; nor has she alleged that any

witnesses will be unable to testify if a stay is granted. Because Doe is "unlikely to face any significant prejudice if a stay is granted," the third factor favors granting a stay. *Id.* at 777.

### D.  Dodds' Private Interest

The Court next considers Dodds' private interest in securing the stay and the burden that would result if the stay were denied. "A defendant facing simultaneous civil and criminal proceedings may be burdened by the choice between invoking his Fifth Amendment rights and jeopardizing his defense in the civil suit, where an adverse inference may be drawn from the defendant's silence." *Brown v. Kenner Police Dep't*, No. CV-17-3445, 2017 WL 5157563, at *2 (E.D. La. Nov. 7, 2017) (cleaned up).

Absent a stay, Dodd would face a conflict between asserting his Fifth Amendment rights and fulfilling his legal obligations as a witness in this action. *See id.* ("The police officers involved in Mr. Brown's shooting have an interest in protecting their Fifth Amendment right against self-incrimination while they are facing possible criminal charges."); *Walker v. Wilburn*, No. 3:13-CV-4896-D, 2015 WL 5873392, at *4 (N.D. Tex. Oct. 5, 2015) (stating that a defendant in civil proceeding who invokes Fifth Amendment as a result of overlapping criminal investigation risks adverse inference arising from his assertion of privilege). Accordingly, the fourth factor weighs in favor of a stay.

### E.  Court's Interests

The Court's interest does not favor either party. "On the one hand, the courts have a strong interest in moving matters expeditiously through the judicial system. On the other hand, granting a stay serves the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *Walker*, 2015 WL 5873392, at * 9. The fifth factor is neutral.

### F.  Public Interest

Finally, the public interest must be considered in determining whether to grant a stay. Criminal prosecutions often take priority over civil actions "due to the significant public interest in law enforcement." *In re Grand Jury*, 866 F.3d at 234. And, while "the public certainly has an interest in the prompt resolution of the instant civil case, it also has an interest in protecting the constitutional rights of criminal defendants." *Meyers v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 WL 393552, at *7 (W.D. Tex. Feb. 1, 2016). Because denying the stay risks violating Dodds' constitutional rights, this factor weighs in favor of a stay. *Id.*

In sum, the undersigned finds that five of the six relevant factors weigh in favor of a stay, while the remaining factor is neutral. For these reasons, Dodds' Motion to Stay Discovery is granted.

### IV.     The City's Motion to Stay

The City argues that the Court should stay discovery pending resolution of its Motion to Dismiss because its Motion raises immunity and "serious questions about the Court's jurisdiction to hear this case." Dkt. 25 at 6-7.

While it is proper to stay discovery pending resolution of threshold immunity and subject matter jurisdiction issues,[6] the City does not actually assert a jurisdictional or immunity argument in its Motion to Dismiss. Instead, the City argues that Doe's constitutional claims under *Monell* fail because she has not pled facts sufficient to show that the alleged constitutional violations were caused by a policy or practice of the City, that is, that the City had a policy or practice of failing to adequately hire, train, or supervise its officers. Dkt. 21 at 5-21. The City contends that this argument concerns whether the Court has "subject matter jurisdiction" and the City is entitled to "governmental immunity."

---

[6] *See Harlow*, 457 U.S. at 818; *Williamson*, 815 F.2d at 383.

The City conflates the doctrines of immunity and subject matter jurisdiction with a failure to state a plausible claim for relief under *Monell*. The City's assertion that it does not have a policy or custom of failing to adequately hire, train, or supervise its officers does not constitute "an immunity from suit," but instead is a "mere defense to liability." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995) (finding that county's assertion that sheriff was not a policymaker was not immunity from suit but instead defense to liability); *see also Novoselsky v. Brown*, 822 F.3d 342, 357 (7th Cir. 2016) (noting that "a *Monell* defense is a 'mere defense to liability,' not immunity from suit") (quoting *Swint*, 514 U.S. at 43); *Wisoff v. City of Schenectady, N.Y.*, 568 F. App'x 28, 30 n.2 (2d Cir. 2014) (noting that city moved to dismiss plaintiff's *Monell* claim under "the wrong Rule" where it invoked Rule 12(b)(1) but "its motion was entirely premised on plaintiff's failure to allege the existence of a municipal policy, practice, or custom that caused the alleged violation of his constitutional rights"); *Trent v. Wade*, No. 3:12-CV-01244-P, 2013 WL 12176988, at *1 n.2 (N.D. Tex. Oct. 15, 2013) (finding that defendants "conflated sovereign immunity with *Monell* liability" in stating that they asserted sovereign immunity in their motion for summary judgment, when "they in fact argued that Plaintiffs had not sufficiently demonstrated that the City was liable under a theory of *Monell* liability"); *see also* Alexander Reinert, Joanna C. Schwartz & James E. Pfander, *New Federalism and Civil Rights Enforcement*, 116 Nw. U. L. Rev. 737, 789 (2021) (noting that "*Monell* standards are not jurisdictional in any sense"). The doctrines of sovereign and qualified immunity, furthermore, do not apply to municipalities. *Williams v. City of Yazoo, Miss.*, 41 F.4th 416, 421 (5th Cir. 2022).

Because the City's only argument in its Motion to Dismiss is that Doe fails to state a plausible claim for relief under *Monell* and a "mere failure to state a claim does not defeat the Court's jurisdiction," the City has not asserted a threshold jurisdictional or immunity argument that would

justify a stay of discovery. *Foster v. Seaside Healthcare*, No. 3:21-CV-03985, 2022 WL 2824671, at *3 (W.D. La. May 27, 2022), *R. & R. adopted*, 2022 WL 2818779 (W.D. La. July 19, 2022); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946):

> Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.

Nevertheless, the Court finds that a stay of discovery against the City is appropriate because Doe's *Monell* claims against the City are inextricably intertwined with her claims against Dodds. Her claims against the City are predicated on constitutional violations allegedly committed by Dodds. To defend against Doe's allegations that the City's policies and procedures was the moving force behind Dodds' constitutional violations, the City will need discovery from Dodds and likely must depose him. Conversely, in order for Doe to prove that the City is liable under *Monell*, she must first demonstrate that Dodds committed a constitutional violation, and that the constitutional violation was caused by the City's policies.

Because the Court has granted a stay of discovery as to Dodds, neither party will be able to obtain the necessary discovery to prove or disprove their claims and defenses. Accordingly, the Court finds that a stay of all discovery directed at both the City and Dodds is appropriate pending the outcome of Dodds' criminal proceedings. *See Trent v. Wade*, No. 3:12-CV-01244-P, 2013 WL 12176988, at *3 (N.D. Tex. Oct. 15, 2013) (granting stay against city "given the close connection of the claims against the City and the claims against [individual officers]").

The Fifth Circuit's decision in *Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022), supports this conclusion. In *Carswell*, the district court declined to rule on the qualified immunity defense at the motion to dismiss stage and entered a scheduling order permitting certain discovery of the

individual defendants in their capacity as witnesses to the actions of other defendants not asserting qualified immunity. The Fifth Circuit held that the district court abused its discretion by deferring its ruling on individual officers' entitlement to qualified immunity. *Id.* at 1068. The court rejected the plaintiff's argument that the scheduling order was proper because it stayed discovery as to issues of qualified immunity while allowing discovery on the *Monell* claims, reasoning that "bifurcation of discovery would radically complicate the case" and impose unreasonable burdens on the defendants. *Id.* at 1068-69.

For these reasons, the Court finds that good cause exists to stay all discovery in this case pending completion of Dodds' criminal proceedings.

## V.   Order

Based on the foregoing, the Court **GRANTS** Defendant Walter Dodds' Motion to Stay Discovery Pending Criminal Proceedings (Dkt. 11) and Defendant City of Austin's Motion to Stay Discovery and Defer Entry of a Scheduling Order (Dkt. 25). The Court temporarily **STAYS** all discovery directed at Defendants Walter Dodds and the City of Austin pending completion of Defendant Walter Dodds' criminal proceedings in state district court.

## VI.   Recommendation

"Where a suit is stayed during the pendency of a criminal proceeding, an administrative closure is appropriate." *Meyers*, 2016 WL 393552, at *8 (citing *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004)). Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Court order the Clerk to administratively close this case. A case that is administratively closed "may be reopened upon request of the parties or on the court's own motion." *Mire*, 389 F.3d at 167.

It is **FURTHER ORDERED** that this case is **REMOVED** from the Magistrate Court's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 14, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE