IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JANE DOE,                                    §
                                             §
            Plaintiff,                       §
                                             §
v.                                           §          1:22-CV-299-RP
                                             §
CITY OF AUSTIN and WALTER DODDS,             §
                                             §
            Defendants.                      §

## ORDER

Before the Court is Defendant City of Austin's ("City") Motion to Dismiss Plaintiff's Third

Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Dkt. 46). The

City's motion addresses only Plaintiff Jane Doe's ("Doe") claim against the City, not her claim

against Defendant Walter Dodds ("Dodds"). (*Id.* at 1). Doe responded to the City's motion, (Dkt.

50), and the City replied in support of its motion, (Dkt. 55). Having considered the parties'

submissions, the record, and the applicable law, the Court will deny the City's motion.

## I. BACKGROUND

Doe brings claims against the City and former Austin Police Department ("APD") Officer

Walter Dodds, in his individual capacity, arising out of Dodds's sexual assault of Doe. (Third Am.

Compl., Dkt. 42, at 1). Doe alleges that Dodds "was acting under color of law as an [APD] officer at

all relevant times" (*Id.*). The City is a municipality that operates the APD, and Doe contends that the

policymaker for policing matters for the City is APD's police chief, which the City does not dispute.

(*Id.*).

On April 18, 2020, Doe and her boyfriend "had an argument during which [he] had a

breakdown, put a belt around his throat, and tightened it to threaten suicide." (*Id.* at 2). Doe's

nephew—at Doe's request—went to his mother, who called 911. (*Id.*). Dodds, while on duty as an

1

APD officer, responded and arrived on the scene, where he interviewed Doe and her boyfriend. (*Id.*). Dodds determined that Doe's boyfriend needed to be placed under emergency detention. (*Id.* at 3). The Austin-Travis County Emergency Medical Services transported Doe's boyfriend to the hospital. (*Id.*). When Dodds interviewed Doe, he asked for her phone number in order to tell her where her boyfriend would be transported. (*Id.*). Dodds later called Doe, told her which hospital her boyfriend had been taken to, "but then began to ask if he could come over." (*Id.*). Doe alleges that she did not give consent for Dodds to come to her home and that Dodds then asked if "[she] would take off his uniform for him and again . . . if he could come over." (*Id.*). Doe alleges that she did not give consent for Dodds to take off his uniform. (*Id.*). Dodds purportedly then called Doe four more times from the same APD-issued cell phone, but Doe did not pick up his calls. (*Id.*).

Later that evening, Doe alleges that Dodds—while still on duty—sexually assaulted her by "penetrating her vagina with his penis" without her consent. (*Id.* at 4–5). The fitted sheet on Doe's bed was later tested for DNA evidence, and the analysis confirmed that Dodds's DNA was present on the sheet. (*Id.* at 5). Doe alleges, on information and belief, that Dodds "used his police vehicle to return to Doe's apartment" and "[r]ather than mark himself available to take another call . . . Dodds came to Doe's home while still marked on 'scene' from his last call or while marked '10-6,' a code used to indicate an officer is busy and should not be assigned to a call unless it is urgent." (*Id.* at 4). Doe further alleges that "[a]lthough Dodds's police vehicle is equipped with a tracking device that APD dispatchers and Dodds's supervisors could use to see his location, neither his supervisor nor the dispatchers challenged Dodds for returning to a residence where there was no reason for him to be or being at a location different than his last call while still marked 'on scene' at that call." (*Id.*).

Doe contends that Dodds continued to call her from his APD-issued cell phone over the next several days. (*Id.* at 5). On April 26, 2020, Doe states that she saw Dodds drive by her apartment complex in his police vehicle. (*Id.*). Doe's nephew photographed the vehicle, which APD

later confirmed was Dodds's assigned police vehicle for that day. (*Id.*). On April 27, 2020, Dodds called Doe again, "using *67 to hide his phone number," and asked if he could come over. (*Id.*). Doe recorded that call, "repeatedly asked [Dodds] to say his name, but [he] only responded, 'It's me.'" (*Id.*). On April 29, 2020, Doe alleges that she called 911 to report the sexual assault by Dodds. (*Id.* at 6). Dodds was then temporarily removed from patrol duty, and he later resigned on August 31, 2020. (*Id.* at 6–7). Doe alleges that "Dodds resigned immediately before APD Internal Affairs 'completed' its investigation into his rape of Doe but after the investigators confirmed he had raped Doe." (*Id.* at 7).

On September 10, 2020, the Travis County District Attorney arrested Dodds for charges of "Sexual Assault and Official Oppression." (*Id.* at 8). On January 24, 2024, Dodds pled "guilty to the third-degree felony of unlawful restraint under Texas Penal Code 20.02(c)(2)(A) for intentionally or knowingly restraining Doe and exposing her to a substantial risk of serious bodily injury during the restraint." (*Id.*).

In her Third Amended Complaint, Doe alleges that "Dodds had abused his authority, training, and equipment as a police officer to sexually assault other people while working at APD," prior to assaulting Doe in 2020. (*Id.* at 10). Further, Doe contends that the City's policymaker, APD's police chief, "was aware of a pattern of sexual misconduct allegations and that APD was not investigating or disciplining the accused perpetrating officers." (*Id.* at 34). Doe alleges many incidents of sexual misconduct perpetrated by APD officers between 2008 and 2004, including multiple occurrences of indecent exposure; sexual assault of a child; and accusations of domestic violence including sexual assault. (*Id.* at 34–51). Doe also alleges that "internal reports were generated by APD, by the Office of the Police Monitor, by the Citizen Review Panel, and by other arms of the City about numerous accusations that [APD's] officers had engaged in sexual violence, but those reports were never published, APD never disciplined the officers, APD failed to seriously

investigate the complaints, APD prematurely closed investigations if officers resigned or retired, and APD never arrested the perpetrators." (*Id.* at 38).

Based on these allegations and others in her Third Amended Complaint, Doe asserts a claim pursuant to 42 U.S.C. § 1983 against the City for failing to train, supervise, and protect in violation of her Fourth and Fourteenth Amendment rights under the U.S. Constitution. (*Id.* at 53–54). The City filed a motion to dismiss Doe's claim against it under Federal Rules of Civil Procedure 12(b)(1) and (6). (Mot. Dismiss, Dkt. 46).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to

the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

### A. Subject Matter Jurisdiction

When a Rule 12(b)(1) motion is filed in conjunction with other motions under Rule 12 of the Federal Rules of Civil Procedure, a federal court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The City brings a Rule 12(b)(1) jurisdictional attack by arguing that because Doe fails to plead a cognizable claim against the City under § 1983, she fails to overcome the City's governmental immunity. (Mot. Dismiss, Dkt. 46, at 6).

The Court finds that the City has not asserted a valid jurisdictional attack on Doe's § 1983 claim, and therefore the City's 12(b)(1) argument in its Motion to Dismiss must be denied. "Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity." *Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998). For § 1983 claims in particular, "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Owen v. City of Indep., Mo.*, 445 U.S. 622, 647–48 (1980) ("[T]he municipality's 'governmental' immunity is obviously abrogated by the sovereign's enactment of a statute making it amenable to suit. Section 1983 was just such a statute. By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished whatever vestige of the States sovereign immunity the municipality possessed."). Therefore, "a municipality can be sued under § 1983, but it cannot be held *liable* unless a municipal policy or custom caused the constitutional injury." *Leatherman*, 507 U.S. at 166 (emphasis added). As such, the City's supposed 12(b)(1) argument is misplaced and must be denied. *See, e.g., Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985) ("[W]hen a defendant's challenge to the court's

jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for

the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on

the merits of the plaintiff's case.").

### B. Failure to State a Claim under § 1983

Doe claims that the City had the following policies, practices, or customs in place when

Dodds sexually assaulted Doe:

> a. Providing no training to APD investigators that they should not close confirmed investigations of sexual misconduct if an officer resigned or retired, thereby imposing no discipline on such officers;
>
> b. Providing no training to supervisors and failing or refusing to implement policies and procedures for supervisors to detect and address highly suspicious behavior by officers using APD tools like their police vehicles and cell phones, despite knowing such training is necessary;
>
> c. Providing no training to patrol officers and supervisors to prohibit them from deprioritizing, minimizing, avoiding, or delaying police responses to sexual assault calls, despite knowing this was the custom and knowing that it invited police misconduct;
>
> d. Providing no training to officers and detectives working sexual assault cases that they should not and could not wrongfully exceptionally clear cases, should not and could not denigrate victims or unilaterally decide sexual assault reports were false or consensual; and should thoroughly investigate before closing sexual assault investigations; and
>
> e. Failing or refusing to discipline or arrest APD officers accused of sexual assault and other acts of sexual violence, despite probable cause to do so, absent specific direction by independent law enforcement agencies such as the Travis County District Attorney's Office.

(Third Am. Compl., Dkt. 42, at 53–54). Doe alleges that APD's Chief of Police Brian Manley was

the City's policymaker for law enforcement purposes when Dodds assaulted Doe, and that each of

the policies, practices, or customs delineated above was "actually known, constructively known,

approved and/or ratified" by the City and Manley. (*Id.* at 54). Further, Doe contends that these

policies, practices, or customs were "promulgated with deliberate indifference to Doe's Fourth and

Fourteenth Amendment rights" and that "the known and obvious consequence of these policies,

practices, or customs was that [APD] officers would be placed in recurring situations where constitutional violations similar to those inflicted on Doe would result." (*Id.*). As such, Doe alleges that "the policies and conduct delineated above were a moving force of [Doe's] constitutional deprivations and injuries, and proximately caused severe damages to [Doe]." (*Id.*).

While *respondeat superior* liability is not available for claims against municipalities, *see Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 402 (1997), there is no heightened pleading standard for § 1983 claims in general, or municipal liability claims specifically. *Leatherman*, 507 U.S. at 165–68. To state a § 1983 claim for municipal liability, a plaintiff must allege facts demonstrating that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016). The "official policy" may be written or may be an unwritten custom, if sufficiently "permanent and well settled." *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (A policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'").

A municipality's failure to train or supervise can also form the basis of a § 1983 claim if the plaintiff pleads specific facts to show: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson*, 588 F.3d at 849.

Deliberate indifference may be established in two ways. First, deliberate indifference generally requires that the plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003); *see also Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) ("A plaintiff may [establish deliberate indifference] by alleging that the municipality had notice of a pattern of similar violations, which were fairly similar to what ultimately transpired.") (citation and quotations omitted).

Second, deliberate indifference can be shown "in a limited set of cases" by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Id.* at 372. The single incident "exception will apply only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* at 373. "The single-incident exception 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)).

The City moves to dismiss Doe's § 1983 claim for failure to state a claim upon which relief can be granted. (Mot. Dismiss, Dkt. 46, at 8–20). Doe responds that she has alleged a § 1983 claim for failure to train "both based on the single incident exception and longstanding patterns of misconduct" as well as a traditional *Monell* claim for a custom of "(almost) never disciplining its officers for sexual misconduct." (Resp., Dkt. 50, at 1). The Court addresses each potential claim in turn.

### 1. Failure to Train

Doe alleges that the City lacked training in the four areas restated as (a)-(d) in *supra* p. 7. (Third Am. Compl., Dkt. 42, at 53–54). Doe also alleges that the City's policymaker knew about

9

these training deficiencies and that the need for this training was obvious.[1] (*Id.* at 7, 10, 11, 13, 17, 19, 21, 27, 48). Further, Doe contends the City's former and current policymakers "had known for decades of the substantial risks that sexual predators would attempt to infiltrate law enforcement"; "that sexual predators with badges would escape consequences absent supervision"; and that "sexual misconduct will recur absent clear rules and consistent application of discipline for breaking them." (Resp., Dkt. 50, at 8–9 (citing Third Am. Compl., Dkt. 42, at 9, 18–19, 20–21)). Therefore, according to Doe, "[t]his made it obvious that the absence of training to (a) discipline, (b) detect, (c) avoid hiding, and (d) properly investigate sexual misconduct would cause continued police sexual misconduct." (*Id.* at 9).

The City provides various arguments as to why each of Doe's alleged areas lacking sufficient training do not present a plausible § 1983 claim. (Resp., Dkt. 46, at 8–18). Generally, the City describes Doe's allegations as implausible, speculative, and mischaracterizing APD's policies, practices, and customs.[2] At the motion to dismiss stage, Doe's allegations must be accepted as true. *Leatherman*, 507 U.S. at 164. The Fifth Circuit does "not require a plaintiff to plead facts 'peculiarly within the knowledge of defendants.'" *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009).

---

[1] Doe identified the current and former APD Chief of Police as the City's policymaker. The Fifth Circuit has found repeatedly that "Texas police chiefs are final policymakers for their municipalities." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (collecting cases). The City does not dispute this element of Doe's § 1983 claim.

[2] The Court notes that Doe asks the Court to "strike and disregard" five documents the City attached to its Motion to Dismiss, or, alternatively, deny the City's motion under Federal Rule of Civil Procedure 56(d). (Resp., Dkt. 50, at 3–6). Doe contends that her Third Amended Complaint does not incorporate those exhibits by reference such that the Court may consider them when deciding a Rule 12(b)(6) motion. (*Id.* at 4). Doe also contends that the exhibits are not "central" to Doe's Third Amended Complaint. (*Id.* at 5). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338 (citations and quotation marks omitted). Here, the Court declines to reach whether Doe incorporated these five documents into her complaint by reference or whether the Court may take judicial notice of any of those documents, as the Court does not find the information in those documents to be necessary for its Rule 12(b)(6) analysis. Therefore, the Court also declines to convert the City's Motion to Dismiss to a Motion for Summary Judgment and deny it under Federal Rule of Civil Procedure 56(d), as Doe suggests, (Resp., Dkt. 50, at 5).

Indeed, "[i]n the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011). Therefore, "plaintiffs need not specifically state what the municipal policy is and can rely on minimal factual allegations at this stage in the litigation." *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017) (citation modified). *See Hall v. City of Waller*, No. CV H-16-3269, 2017 WL 2772576, at *4 (S.D. Tex. June 27, 2017) (finding that plaintiff's allegations as to the defendant city's "specific policies on how to disperse large crowds and how to properly use pepper spray" "provide the City fair notice of the claim against it and that the alleged facts are plausible to raise a reasonable expectation that discovery will reveal further supporting evidence").

As such, taking Doe's pleadings as true at this stage, the Court finds that Doe has sufficiently pled that the training procedures of the City's policymaker were inadequate. In the four areas Doe alleges the City lacked training—restated as (a)-(d) in *supra* p. 7—Doe "has pled more than a threadbare recital of a 42 U.S.C. § 1983 claim against the city." *Benjamin v. Baytown Police Dep't*, No. 4:17-CV-01198, 2018 WL 1033255, at *2 (S.D. Tex. Feb. 21, 2018). In response to the City's Motion to Dismiss, Doe points to the allegations in her Third Amended Complaint which she argues highlight "longstanding pattern[s]" of inadequate training at APD in each of the alleged areas. (Resp., Dkt. 50, at 12–13 (citing Third. Am. Compl., Dkt. 42)). Doe's Third Amended Complaint alleges sufficiently specific facts describing the four areas in which she contends APD lacks adequate training, which are (1) "APD's failure to train administrative investigators not to close confirmed investigations of sexual misconduct without enacting discipline or publishing findings due to the officer's resignation or retirement"; (2) APD's failure to train supervisors to detect and address "highly suspicious behavior" by officers using APD tools; (3) APD's failure to train "patrol officers

and supervisors to prohibit them from deprioritizing, minimizing, avoiding, or delaying police responses to sexual assault calls"; and (4) APD's failure to train officers and detectives to not "wrongfully exceptionally clear cases" nor "denigrate victims or unilaterally decide sexual assault reports were false or consensual" or fail to "thoroughly investigate before closing sexual assault investigations." (*Id.*). (Third Am. Compl., Dkt. 42, at 53–54).

"Because [Doe's] allegations refer to the specific topic of the challenged policy or training inadequacy, they provide the City with adequate notice of the claims against it and can thus survive a motion to dismiss." *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 545 (W.D. Tex. 2017) (cleaned up). And, as noted above, the Fifth Circuit does "not require a plaintiff to plead facts 'peculiarly within the knowledge of defendants.'" *Morgan*, 335 F. App'x at 472. Therefore, "plaintiffs need not specifically state what the municipal policy is and can rely on minimal factual allegations at this stage in the litigation." *Sanchez*, 283 F. Supp. 3d at 532 (citation modified). Doe has pled her case with sufficient particularly for the Court to infer that APD's training procedures in the four areas Doe alleges were inadequate, at this stage. Further, the Court finds convincing here the Fifth Circuit's ruling in *Drake v. City of Haltom City*, in which that court found that the plaintiff-appellants had stated cognizable claims against the defendant city under § 1983 because the court was "unwilling to say, at this point, that it is not obvious that male jailers who receive *no* training and who are left virtually unsupervised might abuse female detainees." 106 F. App'x 897, 900 (5th Cir. 2004) (emphasis in original). Here too, it is plausibly obvious that police officers and their supervisors—who exert an inordinate amount of power over the communities they serve—should be adequately trained, in various ways, to prevent behaviors often perpetrated by those with power over vulnerable populations, such as sexual misconduct and assault.

The City also argues that Doe cannot establish deliberate indifference through either of the two ways established by the Fifth Circuit. *See Burge*, 336 F.3d at 370. First, the City contends that the

prior acts Doe alleges to establish a pattern of similar violations are insufficient "to establish an

unofficial custom necessitating the training described in the complaint." (Resp., Dkt. 50, at 13). In

*Est. of Davis ex rel. McCully v. City of N. Richland Hills*, the Fifth Circuit found:

> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather
> must point to the specific violation in question. That is, notice of a pattern of *similar*
> violations is required. While the specificity required should not be exaggerated, our
> cases require that the prior acts be fairly similar to what ultimately transpired and, in
> the case of excessive use of force, that the prior act have involved injury to a third
> party.

406 F.3d 375, 383 (5th Cir. 2005) (emphasis in original).

The Court finds that the various incidents of sexual misconduct at APD Doe alleges[3]

constitute a pattern of "fairly similar" violations at this stage. (*See* Third. Am. Compl., Dkt. 42, at 10,

34–51). *See Est. of Davis*, 406 F.3d at 383; *Sanchez*, 283 F. Supp. 3d at 547 (finding in a § 1983 claim

against the City of El Paso for their police department's failure to train officers to interact with

individuals suffering from mental illness that "[p]laintiffs highlighted nine different occasions over

the last four years where [City of El Paso Police Department] officers appear to be utterly

unprepared for various encounters with individuals suffering from mental health crises" and

concluding that "[i]f [p]laintiffs' allegations are true, a reasonable policymaker would have

implemented enhanced training techniques to reduce the frequency of these outcomes, yet [the chief

of the police department] failed to do so here."). "The standard for deliberate indifference requires

---

[3] The City argues that the second alleged sexual assault at issue—perpetrated by "Officer X"—occurred at least two years after Dodds assaulted Doe in 2020 and "is of no relevance in determining whether a pattern existed at APD." (Mot. Dismiss, Dkt. 46, at 12) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1884 (5th Cir. 1989) ("To prove a pattern or practice under *Monell*, plaintiff must present evidence of sufficiently numerous *prior* incidents of police misconduct."). Doe rebuts this assertion by citing to other Fifth Circuit precedent "[finding] subsequent incidents relevant to find *Monell* liability." (Resp., Dkt. 50, at 15 (citing *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 457 (5th Cir. 2009) (affirming admission into evidence in § 1983 case of report released two years after incident which included subsequent incidents)). The Court agrees with Doe that *Shepherd* seems to suggest that similar incidents within a few years of the incident at issue in a § 1983 claim can be considered in the deliberate indifference analysis. Regardless, the Court concludes that Doe has pled sufficient prior similar incidents to establish deliberate indifference without the additional sexual assault perpetrated after Dodds's assault of Doe.

only a pattern of *similar* constitutional violations by untrained employees, rather than an exact duplication." *Parker v. LeBlanc*, 73 F.4th 400, 406 (5th Cir. 2023) (emphasis in original) (citation and quotations omitted).

As such, viewing Doe's well-pleaded facts as true and in the light most favorable to her, the Court therefore concludes that Doe has demonstrated, at this stage, "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violations" and was known to the City's policymaker. *See Burge*, 336 F.3d at 370; *Doe v. Kerrville Indep. Sch. Dist.*, No. SA-21-CV-00369-XR, 2023 WL 8361747, at *12 (W.D. Tex. Nov. 30, 2023) ("When policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program."). The recurring incidences of sexual misconduct by APD officers—who are afforded great power to fulfill their duty to keep Austin's residents safe from harm—in an environment Doe alleges lacked sufficient and necessary training to prevent that misconduct should have alerted APD's Chief of Police "to the need for improved training in this regard." *Sanchez*, 283 F. Supp. 3d at 547. Doe alleges in her Third Amended Complaint a variety of incidents of sexual misconduct, most of which were non-consensual in nature and the result of violence or force by APD officers, similar to Dodds's assault of Doe at issue here. (Third. Am. Compl., Dkt. 42, at 34–51).

Thus, the Court concludes that Doe has pleaded sufficient facts to support an inference of deliberate indifference. Because the Court finds that Doe has demonstrated at least a pattern of similar violations to support an inference of deliberate indifference, the Court does not reach the parties' arguments as to whether Doe can also successfully establish deliberate indifference through the single-incident exception.

Finally, Doe contends that the City's failures directly caused the constitutional violation in question by stating the following:

> (a) Because of the culture of impunity that arose within APD from the perennially incomplete investigations, Dodds did not need to fear, and indeed never suffered, administrative consequences for sexual violence. (b) Because supervisors did nothing to monitor officers for signs that were overtly suspicious for sexual misconduct, such as Dodds' returning to linger at sites of prior calls hours or days later, or calling and texting sexual messages to victims, Dodds was not detected until Plaintiff reported him. (c) Dodds' opportunity to evade detection was further enhanced by his ability to falsely mark himself unavailable without consequences. Finally, (d) Dodds was emboldened to sexually assault and then harass Plaintiff by the widespread failure by APD to take any sexual offenses seriously. Thus, each failure to train, independently and when considered together as they each had "a mutually enforcing effect" on the other, was a moving force of the violations of Plaintiff's constitutional rights.

(Resp., Dkt. 50, at 10) (citing Third Am. Compl., Dkt. 42, and *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Construing Doe's allegations in her favor, it is plausible at this stage that the City's inadequate policies directly caused, and were the moving force behind, Dodds's assault of Doe. *See Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-CV-01233, 2017 WL 11825006, at *6 (W.D. Tex. May 24, 2017). As such, the Court finds that Doe has pled sufficiently specific facts to support a failure to train claim under § 1983 and survive the City's Rule 12(b)(6) argument for dismissal. Doe's Third Amended Complaint "raise[s] a right to relief above the speculative level." *In re La. Crawfish Producers,* 772 F.3d 1026, 1029 (5th Cir. 2014) (quoting *Twombly,* 550 U.S. at 555).

### 2. Lack of Discipline for Sexual Misconduct

In response to the City's arguments that Doe's § 1983 claim should be dismissed for failure to state a claim, (Mot. Dismiss, Dkt. 46, at 8–20), Doe also contends that she has alleged a traditional *Monell* claim for a custom of "failing and refusing to discipline or arrest APD officers accused of sexual assault and other acts of sexual violence, despite probable cause to do so, absent specific direction by independent law enforcement agencies such as the Travis County District Attorney's Office," restated as (e) in *supra* p. 7. (Resp., Dkt. 50, at 1).

Doe argues that the identified custom is "a longstanding pattern of generally sidestepping investigations of sexual misconduct altogether, or, where that is not possible, permitting officers accused of sexual misconduct to retire or resign, rather than be disciplined, which occurred in this case and many others." (*Id.* at 16 (citing Third Am. Compl., Dkt. 42)). Further, Doe contends that "[d]espite receiving a mountain of complaints, APD only disciplined a single officer for sexual misconduct in an eighteen-year period" and that the City's policymaker, APD's police chief, has been personally, directly involved in these decisions and "aware that the ongoing failure to discipline would perpetuate such misconduct throughout the department." (*Id.* at 16–17 (citing Third Am. Compl., Dkt. 42)). Therefore, Doe alleges that "[t]he City routinely allowed its officers, including Dodds, to escape administrative consequences from APD by either not investigating seriously or improperly closing investigations into sexual misconduct, such as when the accused officer resigns or retires and then declining to impose discipline or publish the investigation's results on the grounds that the officer was no longer employed." (*Id.* at 16 (citing Third Am. Compl., Dkt. 42)). The City responds that "[a]n officer only being 'accused' does not reasonably warrant discipline or arrest" such that "APD's alleged failure to take such action before the accusation is investigated and corroborated does not demonstrate a conscious indifference to a pattern of similar constitutional violations." (Reply, Dkt. 55, at 10). The City also contests the factual allegations of Doe's Third Amended Complaint. (*Id.*).

"When the official policymaker knows about misconduct yet allegedly fails to take remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020). As such, the Court finds that Doe has properly pled the first two elements to state a § 1983 claim for municipal liability. *See Groden*, 826 F.3d at 283. Finally, Doe alleges that the City's practice was the moving force of Dodds's assault of Doe. (Third Am. Compl., Dkt. 42, at 54). Doe states "Dodds

knew APD did not seriously punish sexual misconduct or sexual violence, causing his violence." (Resp., Dkt. 50, at 17 (citing Third Am. Compl., Dkt. 42, at 38, 54)). Accepting Doe's well-pleaded facts as true and in the light most favorable to her, the Court finds that Doe has also sufficiently pled a traditional claim for municipal liability under § 1983 at this stage.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that the City's Motion to Dismiss, (Dkt. 46), is **DENIED**.

**SIGNED** on March 3, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE