**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JANE DOE,**<br>*Plaintiff*<br><br>**v.**<br><br>**THE CITY OF AUSTIN and WALTER DODDS,**<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 1:22-cv-00299-RP** |

**ORDER**

Now before the Court are Plaintiff's Motion to Compel Written Discovery to Defendant City of Austin About Similar Incidents, filed July 22, 2026 (Dkt. 73); Defendant City of Austin's Motion for Protective Order on Plaintiff's Rule 30(b)(6) Notice of Deposition, filed July 27, 2026 (Dkt. 74); the associated response and reply briefs; and the Joint Advisory to the Court, filed September 23, 2026 (Dkt. 84).[1]

On September 21, 2026, the Court held a hearing on the motions at which Plaintiff Jane Doe and Defendant the City of Austin appeared through counsel. After the hearing, as ordered by the Court, counsel again conferred and reached agreements resolving some of their discovery disputes, as noted below. Dkt. 84.

## I. Background

Plaintiff Jane Doe[2] brings this civil rights lawsuit under 42 U.S.C. § 1983 against the City of Austin and former Austin Police Department Officer Walter Dodds in his individual capacity.

[1] By Text Orders issued August 11, 2026, the Honorable Robert Pitman referred the motions to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Judge Pitman also referred Plaintiff's Motion for Default Judgment against Defendant Walter Dodds (Dkt. 71), who has not appeared in the case, which the Court will take up in due course.

[2] Doe "files under a pseudonym to protect her privacy and safety." Third Amended Complaint, Dkt. 42 ¶ 1.

Third Amended Complaint, Dkt. 42. Doe alleges that Dodds, while on duty, sexually assaulted her at her apartment on April 18, 2020 and harassed her for eight days afterward. She asserts Fourth and Fourteenth Amendment claims against Dodds and a failure to train, supervise, and protect claim against the City. Discovery closed July 31, 2026, dispositive motions are due on this date, and trial is set for January 25, 2027. Text Order issued June 30, 2026.

## II. Legal Standards

Under Rule 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). A trial court enjoys wide discretion in determining the scope and effect of discovery. *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

## III. Motion to Compel

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). Once a party moving to compel discovery shows that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests on the party resisting discovery to substantiate its objections. *Lozano v. Baylor Univ.*, 339 F.R.D. 447, 450 (W.D. Tex. 2020).

Doe asks the Court to compel the City to respond to two requests for production ("RFPs") (Nos. 10 and 43) and two interrogatories (Nos. 14 and 15).[3] RFP 10 seeks documents concerning any prior misconduct involving Dodds:

> 10. All documents concerning complaints involving Walter Dodds where a law enforcement officer allegedly engaged in sexual harassment, sexual violence, or sexual discrimination for the period January 1, 2015 to the present.

Dkt. 73-2 at 10. RFP 43 and Interrogatories 14 and 15 seek discovery on "other similar incidents":

> 43. All Internal Affairs, Special Investigation Unit, and Office of Police Oversight investigation files concerning any incident where any APD [Austin Police Department] employee or contractee has been investigated for alleged sexual assault, sexual harassment, or sexual discrimination during the period January 1, 2015 to present.
>
> 14. Identify every instance in which it has been alleged that Austin Police Department officers or civilian employees or contractees engaged in sexual assault, rape, or other sexual or gender-based violence for the period January 1, 2015 to the present. For each such instance, please identify any incident in which the Austin Police Department found the officer's conduct violated its policies.
>
> 15. Identify [e]very instance in which it has been alleged that Austin Police Department officers or civilian employees or contractees engaged in sexual harassment, sexual discrimination, or other sexual misconduct for the period January 1, 2015 to the present. For each such instance, please identify any incident in which the Austin Police Department found the officer's conduct violated its policies.

Dkt. 73 at 6; Dkt. 73-2 at 13; Dkt. 73-3 at 10. Doe limits these to the time before October 31, 2023 and excludes "sexual discrimination." Dkt. 73 at 6.

After the City produced more than 4,000 pages of documents, the parties reached an agreement on June 3, 2026 "intended to satisfy Plaintiff's requests" as to these four disputed discovery requests (and three others). Dkt. 77 at 4. The City conducted four searches of APD files using negotiated search terms and produced 700 documents; it states that none involve complaints or

[3] Plaintiff has withdrawn her motion to compel as to Request for Production No. 8. Dkt. 84 at 3.

investigations of "similar incidents" to Doe's. *Id.*[4] For RFP 10, the City has produced "all complaints regarding officers alleged to have committed a sex crime from January 1, 2015 to the date of the subject incident," none of which appear to involve Dodds. *Id.* at 9. The City has produced forty-three APD internal affairs ("IA") investigative reports or complaints and eleven special investigation unit ("SIU") reports. *Id.* at 4. In addition to the Dodds complaints, the City produced the entire investigatory files for all the IA files except two that are "exceedingly large," and for those two produced the original complaint, investigatory summary, and disciplinary outcome. *Id.* at 6. For the SIU investigations, the City did not produce the entire files but did produce the general offense report, which includes "a detailed account of all investigatory steps by the assigned detectives including witnesses interviewed, evidence collected, and descriptions of videos, calls and interviews." *Id.* at 7.

The parties sharply dispute whether the City's production complied with their agreement. The City asserts that Doe "unilaterally cancels negotiated document searches and production agreements made months ago to resolve Plaintiff's written discovery disputes." *Id.* at 1. Doe contends that "the City has not made good on its own agreement to resolve this discovery issue, so the prior agreement is void and does not govern Plaintiff's motion." Dkt. 80 at 2. She argues that the City "has refused to uphold its end of the bargain" and breached the agreement by producing only "partial documentation from each investigation, with the names of complaining witnesses redacted." Dkt. 73 at 2, 3. Doe moves to compel the entire files for all responsive SIU and IA investigations and complaints, without redaction of complainant names.

---

[4] The City states: "One file involved the alleged sexual assault of an individual during an arrest, which was affirmatively disproven by body camera evidence. The other file involves an alleged sexual assault in the context of an established dating relationship between two APD officers." Dkt. 77 at 6. The City contends that there "are no 'similar incidents' of APD officers sexually assaulting people on duty, a fact of which Plaintiff is well aware after more than a year of discovery." *Id.* at 1.

Conferral emails show Doe agreed the City would search for complaints initiated through April 30, 2020, and produce documents "with appropriate redactions/pseudonyms and confidentiality protections." Dkt. 77-1 at 4-5. The City argues that the files cannot be produced without redactions because the identities of alleged victims of sexual assault are confidential, and Texas law bars releasing the names of complainants who proceeded under a pseudonym. Dkt. 77 at 5-6. Provisions cited by the City include TEX. CODE CRIM. P. ART. 58.102-.103, which permits sexual assault victims to proceed by pseudonym and prohibits the release of their names, and TEX. GOV'T CODE § 552.1315, which designates information about sexual assault victims as confidential under the public information act. The Court finds that the City has shown its redaction of the names and identifying information of those complaining of sexual assault is appropriate.

Turning to the discovery timeframe, the parties directed little argument to their dispute over the end date for the disputed production – October 31, 2023 (Doe) vs. April 30, 2020 (the City) – in their briefs or at the hearing and do not address it at all in their Joint Advisory. As stated, Doe originally agreed that the City would search for complaints responsive to these requests initiated through April 30, 2020. Dkt. 77-1 at 4-5. She now argues that discovery more than three years after her attack is relevant to her claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1968), based on the allegations of a former APD civilian employee after his arrest in October 2023 "that he had knowledge of a high-ranking APD officer [ ] sexually assaulting another civilian employee on several occasions sometime between 2022-2023." Dkt. 42 ¶ 317. Doe cites *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 457 (5th Cir. 2009), a § 1983 conditions of confinement case in which the Fifth Circuit found no error in admitting a 2006 report describing "numerous specific incidents of failure to provide adequate medical care that occurred shortly before, during, and shortly after the period of Shepherd's detention from late 2003 to early 2004." *See also Barnes v. City of El Paso*,

No. EP-22-CV-161-KC, 2025 WL 600181, at *3 (W.D. Tex. Feb. 24, 2025) (stating that events after the plaintiff's injury cannot show pattern liability, but "subsequent incidents may, in some instances, offer additional circumstantial support for a finding that a pattern existed prior to the underlying incident"). In the Fifth Circuit, "courts view the probative value of subsequent incidents as relatively low compared to prior incidents." *Barnes*, 2025 WL 600181, at *3.

Although the probative value of subsequent incidents is comparatively low, the Court finds that it is relevant under Rule 26(b)(1). Accordingly, the Court **ORDERS** the City to supplement its production responsive to RFP 43 and Interrogatories 14 and 15 as to complaints about officers alleged to have committed a sex crime from May 1, 2020 to October 31, 2023.

As to producing files in their entirety, the City contends that the files it has not produced are very large and too cumbersome to review, process, redact, and produce because the information is in different places and the files include audio and video media, text messages, and other physical evidence, but it has produced descriptions of videos, calls, and interviews. Dkt. 77 at 7; Dkt. 84 at 5-6. The Court finds that the City has met its burden to show that the burden of producing the entire files outweighs Doe's need for this discovery.

Finally, as described at the hearing and in the Joint Advisory, data from the searches the City has already done would have captured sexual harassment complaints, at least through April 30, 2020. Because Doe accuses Dodds of sexual harassment, these documents are relevant to her claims, and the Court finds that their relevance outweighs the burden of production. The Court **ORDERS** the City to produce documents responsive to RFPs 10 and 43 and Interrogatories 14 and 15 relating to sexual harassment complaints from January 1, 2015 through October 31, 2023 and to produce from the complaint file "the complaint itself, the investigative summary, the transcripts of any interviews, the control sheet, and the disciplinary memorandum." Dkt. 84 at 5.

## IV. Motion for Protective Order

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). A trial court has wide discretion to determine whether to grant a motion for protective order. *BDO USA*, 876 F.3d at 698.

The City seeks a protective order as to five topics in Doe's Rule 30(b)(6) deposition notice: Nos. 6, 11, 14, 17, and 22.[5] The deposition proceeded on all undisputed topics on July 31, 2026. Four disputed topics (6, 11, 17 and 22) concern the "knowledge and understanding" of the APD police chief when Doe was assaulted, Brian Manley, who retired in 2021. Dkt. 74-1 at 22-24. Those are:

> 6. The chief of police during the time of this incident's knowledge and understanding of City of Austin and APD training, policies, procedures, and instructions in effect at the time of this incident regarding how a supervisor should monitor whether officers are continuing to mark themselves "on scene" after completing the task of a previous call or interaction rather than correctly marking themselves as available for service during the period January 1, 2015 through April 30, 2020.
>
> 11. The chief of police during the time of this incident's knowledge and understanding of City of Austin and APD training, policies, procedures, and instructions in effect at the time of this incident regarding how a supervisor should monitor whether officers are deprioritizing sexual assault calls for service during the period January 1, 2015 through April 30, 2020.

[5] Doe withdrew a sixth topic in her response brief and the parties resolved a seventh after the hearing. Dkt. 78 at 1; Dkt. 84 at 2.

> 17. The chief of police during the time of this incident's knowledge and understanding of City of Austin and APD training, policies, procedures, and instructions in effect at the time of this incident regarding detecting, investigating, and disciplining officers alleged to have engaged in a rape, sexual assault, aggravated sexual assault, indecent assault, and/or sexual coercion, whether on or off duty, during the period January 1, 2015 through April 30, 2020.
>
> 22. The chief of police during the time of this incident's knowledge and understanding of City of Austin and APD training, policies, procedures, and instructions in effect at the time of this incident regarding detecting, investigating, and disciplining officers alleged to have engaged in while on duty a sexual assault of a child and/or indecency with a child during the period January 1, 2015 through April 30, 2020.

Doe deposed Manley in his personal capacity for more than six hours on July 13, 2027, and questioned him about eighteen exhibits. The deposition yielded a 271-page transcript, which the Court has read. Dkt. 81-1. Doe seeks to depose a Rule 30(b)(6) witness about Manley's knowledge supported by additional documentary evidence from the City. The City argues:

> Manley's "knowledge and understanding" is a topic only Manley can testify about. For the City to locate, prepare and make available some other witness to testify about what Manley's personal "knowledge and understanding" of events was while he was APD chief, is unduly vague, overly burdensome, not feasible and not something the City can do. Even if it could be done, the effort required on the part of APD to identify, prepare and produce such designated witnesses . . . is far out of proportion to the legitimate discovery needs of the case.

Dkt. 74 at 6-7.

Considering Manley's extensive testimony and the documents the City has produced, the Court finds that the probative value of testimony on Manley's knowledge and understanding of these topics as police chief would be marginal and outweighed by the burden of producing a representative to testify. Finding these topics duplicative and overly burdensome, the Court **GRANTS** the City's motion for protective order as to Topics 6, 11, 17, and 22.

The other topic is:

> 14. The City of Austin's training, supervision, and discipline concerning detecting, investigating, and disciplining officers alleged to have engaged in a rape, sexual assault, aggravated sexual assault, indecent assault, and/or sexual coercion, whether on or off duty, during the period January 1, 2015 through April 30, 2020.

Dkt. 74-1 at 23. Counsel for the City represented at the hearing that the City could produce a witness to testify about this topic generally and has not shown that doing so would be overly burdensome. The Court therefore **DENIES** the City's motion for protective order as to Topic 14.

## V. Conclusion

The Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Compel Written Discovery to Defendant City of Austin About Similar Incidents (Dkt. 73). The Court **ORDERS** the City to:

1. supplement its production responsive to RFP 43 and Interrogatories 14 and 15 as to complaints about officers alleged to have committed a sex crime from May 1, 2020 to October 31, 2023, and
2. produce documents responsive to RFPs 10 and 43 and Interrogatories 14 and 15 relating to sexual harassment complaints from January 1, 2015 through October 31, 2023 and produce from the complaint file the complaint itself, the investigative summary, the transcripts of any interviews, the control sheet, and the disciplinary memorandum

**by October 30, 2026**, or as otherwise agreed by the parties. All other relief Plaintiff requests in her Motion to Compel is **DENIED**.

The Court **GRANTS IN PART and DENIES IN PART** Defendant City of Austin's Motion for Protective Order on Plaintiff's Rule 30(b)(6) Notice of Deposition (Dkt. 74). The Court **GRANTS** the motion as to Topics 6, 11, 17, and 22 and **DENIES** the motion as to Topic 14. The Court **ORDERS** the City to produce a witness to testify on Topic 14 pursuant to Rule 30(b)(6) at a mutually convenient time **by October 30, 2026**, or as otherwise agreed by the parties.

**SIGNED** on September 30, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE